**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

---

JOHN GAETANO, BERTHA NOGAS,
KATHI MARTIN, AND MARYANNE
TAVERNE, INDIVIDUALLY AND ON
BEHALF OF ALL OTHERS SIMILARLY
SITUATED,

        Plaintiffs,

        -v-                        6:25-CV-118 (AJB/CBF)

MVHS, INC.,

        Defendant.

---

**Hon. Anthony Brindisi, U.S. District Judge:**

**DECISION and ORDER**

## I.    INTRODUCTION

On January 23, 2025, plaintiffs John Gaetano, Bertha Nogas, Kathi Martin, and Maryanne Taverne (collectively "plaintiffs"), employees of Mohawk Valley Health System, Inc. ("MVHS" or "defendant"), filed this putative class action alleging that defendant mismanaged the employer-sponsored retirement plan (the "Plan") and violated the Employee Retirement Income Security Act of 1974 ("ERISA").  Dkt. No. 1 ("Compl.").

Defendant has moved under Rule 12(b)(6) of the Federal Rules of Civil Procedure to dismiss plaintiffs' complaint.  Dkt. No. 13.  The motion has been fully briefed, Dkt. Nos. 13, 14, 15, and will be considered on the basis of the submissions without oral argument.[1]

---

[1] Both parties have filed sur-replies.  Dkt. Nos. 16, 17.  But neither party sought, nor received, prior leave of court as required by this District's Local Rules.  L.R. 7.1(a)(1).  Although "the Court has discretion to consider documents filed in violation of procedural rules," *Anghel v. New York State Dep't of Health*, 947 F. Supp. 2d 284, 293 (E.D.N.Y. 2013), *aff'd*, 589 F. App'x 28 (2d Cir. 2015) (summary order), the Court declines to exercise its discretion here.

## II.     BACKGROUND

In July 1989, MHVS established the MVHS, Inc. 401(k) Plan (the "Plan").  Compl. ¶ 13.  The Plan is a defined-contribution retirement plan.  *Id.*  As such, participants allocate their retirement contributions among a menu of investment options that have been pre-selected by MVHS.  *Id.* ¶¶ 13, 15, 23.

Plaintiffs Gaetano, Nogas, Martin, and Taverne are four former employees of MVHS and alleged participants in the Plan.  Compl. ¶¶ 9–12.  Plaintiffs claim that they suffered financial losses as a result of defendant's mismanagement of the Plan and violations of ERISA.  *Id.*  Specifically, plaintiffs assert that defendant breached its fiduciary duties, violated ERISA's anti-inurement provision, and engaged in a prohibited transaction by failing to prudently select and monitor Plan investments, charging participants excessive fees, and improperly using forfeited funds for its own benefit rather than defraying the cost of the Plan's administrative expenses borne by plaintiffs.  *See id.* ¶¶ 23–55.

During the putative class period, from January 23, 2019 through January 25, 2025 (the "Class Period"),[2] the number of participants ranged from 2,810 to 4,486.  Compl. ¶ 43.  As of December 31, 2023, the Plan had 4,486 participants and approximately $204 million in assets under management.  *Id.* ¶ 13.  During the Class Period, Lincoln National Corporation ("Lincoln") served as the Plan's custodian and recordkeeper.  *Id.* ¶¶ 16, 19.

---

[2] Plaintiffs define the Class Period as beginning six years before the date of the complaint, which the Court calculates to be January 23, 2019.  Compl. ¶ 9 n.2.

III.    **LEGAL STANDARD**

A.    **Rule 12(b)(1)**

"A district court properly dismisses an action under Rule 12(b)(1) for lack of subject matter jurisdiction if the court 'lacks the statutory or constitutional power to adjudicate it[.]'" *Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.a.r.l*, 790 F.3d 411, 416–17 (2d Cir. 2015) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova*, 201 F.3d at 113 (citing *Malik v. Meissner*, 82 F.3d 560, 562 (2d Cir. 1996)).

"Subject matter jurisdiction is a threshold issue and, thus, when a party moves to dismiss under both Rules 12(b)(1) and 12(b)(6), the motion court must address the 12(b)(1) motion first." *Brokamp v. James*, 573 F. Supp. 3d 696, 703 (N.D.N.Y. 2021) (citing *Hartwick v. Annucci*, 2020 WL 6781562, at *4 (N.D.N.Y. Nov. 18, 2020)), *aff'd*, 66 F.4th 374 (2d Cir. 2023). Further, a district court may look to evidence outside of the pleadings when resolving a motion to dismiss for lack of subject matter jurisdiction. *Makarova*, 201 F.3d at 113.

B.    **Rule 12(b)(6)**

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). At the motion to dismiss stage, the Court must "accept all factual allegations as true and draw every reasonable inference from those facts in the plaintiff's favor." *Mayor & City Council of Balt. v. Citigroup, Inc.*, 709 F.3d 129, 135 (2d Cir. 2013). However, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678.

When ruling on a motion to dismiss under Rule 12(b)(6), the Court may properly consider "documents appended to the complaint or incorporated in the complaint by reference," "matters of which judicial notice may be taken," and documents that, although not incorporated by reference, are "integral" to the complaint. *Goel v. Bunge, Ltd.*, 820 F.3d 554, 559 (2d Cir. 2016). In the context of ERISA claims, courts "routinely consider employee benefit plan documents to be incorporated by reference into complaints." *Polanco v. WPP Grp. USA, Inc.*, 2025 WL 3003060, at *3 (S.D.N.Y. Oct. 27, 2025) (collecting cases). Material "integral" to the complaint includes disclosure documents publicly filed by the Plan and its alleged comparators. *See Singh v. Deloitte LLP*, 123 F.4th 88, 95 (2d Cir. 2024).

Evaluating ERISA claims at the motion to dismiss stage requires "particular care . . . to ensure that the complaint alleges *nonconclusory* factual content raising a *plausible* inference of misconduct and does not rely on the vantage point of hindsight." *Sacerdote v. N.Y. Univ.*, 9 F.4th 95, 107 (2d Cir. 2021) (quoting *Pension Benefit Guar. Corp. v. Morgan Stanley Inv. Mgmt. Inc. ("PBGC")*, 712 F.3d 705, 716 (2d Cir. 2013)). But as "ERISA plaintiffs generally lack the inside information necessary to make out their claims in detail" prior to discovery, a claim under ERISA "may withstand a motion to dismiss based on sufficient circumstantial factual allegations to support the claim, even if it lacks direct allegations of misconduct." *Id.*

"Because ERISA fiduciaries face 'difficult tradeoffs,' we 'give due regard to the range of reasonable judgments [they] may make based on [their] experience and expertise.'" *Boyette v. Montefiore Med. Ctr.*, 2025 WL 48108, at *1 (2d Cir. Jan. 8, 2025) (quoting *Hughes v. Northwestern Univ.*, 595 U.S. 170, 177 (2022)) (summary order). "It is not 'necessarily sufficient to show that better investment opportunities were available at the time of the relevant decisions.'" *Singh*, 123 F.4th at 93 (quoting *PBGC*, 712 F.3d at 718).

## IV.    DISCUSSION

The complaint consists of four counts.  First, plaintiffs claim that defendant breached its fiduciary duties by (1) imprudently failing to investigate the availability of alternative share classes; (2) imprudently failing to investigate alternative investment funds; (3) imprudently failing to investigate how it should use forfeited funds; and (4) disloyally utilizing forfeited accounts to lessen its own matching contributions (Count I).  Second, plaintiffs allege that defendant breached its duty of prudence by failing to monitor Lincoln's recordkeeping fees, resulting in plaintiffs paying excessive fees (Count II).  Third, plaintiffs allege that defendant violated the anti-inurement provision of ERISA (Count III) and engaged in prohibited transactions (Count IV) by using forfeited accounts to lessen its matching contributions.

### A.    Standing

Before turning to the merits of plaintiffs' complaint, the Court must first address defendant's argument that plaintiffs lack standing for certain of their claims.[3]  Defendant argues that: (i) plaintiff Kathi Martin lacks standing for all claims because she is not a Plan participant; (ii) plaintiff Maryanne Taverne lacks standing as to the failure to monitor share fund options because she does not allege she invested in such funds; and (iii) all plaintiffs lack standing as to the breach of fiduciary duties claim regarding the Plan's stable fund options because none invested in any of those investment options.  Dkt. No. 13-4 ("Def.'s Mot.") at 11–13.[4]

"Article III limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' and by extension requires a plaintiff to satisfy the irreducible constitutional minimum of standing." *Duke*

---

[3] Although not expressly framed in those terms, the Court construes defendant's standing arguments as seeking dismissal under Fed. R. Civ. P. 12(b)(1).  And whether a defendant raises such arguments or not, "standing is a threshold matter of justiciability, and if a plaintiff lacks standing to sue, [a court] has no choice but to dismiss the plaintiff's claim for lack of subject-matter jurisdiction." *Tavarez v. Moo Organic Chocolates, LLC*, 623 F. Supp. 3d 365, 370 (S.D.N.Y. 2022).

[4] Pagination corresponds to CM/ECF header.

*v. Luxottica U.S. Holdings Corp.*, 167 F.4th 16, 26 (2d Cir. 2026) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 559–60 (1992)) (internal quotation marks omitted). "The standing doctrine, which emerges from Article III, is designed 'to ensure that federal courts do not exceed their authority as it has been traditionally understood.'" *SM Kids, LLC v. Google LLC*, 963 F.3d 206, 211 (2d Cir. 2020) (quoting *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016)).

The Second Circuit recently clarified that when, as here, plaintiffs are suing on behalf of a proposed class, they must plausibly allege that they have both Article III standing and class standing. *Collins v. Ne. Grocery, Inc.*, 149 F.4th 163, 170–71 (2d Cir. 2025).

For the reasons discussed below, plaintiffs have plausibly alleged that they have individual and class standing as to their claims for (1) breach of fiduciary duty of prudence regarding defendant's alleged failure to investigate the availability of alternative share classes (Count I); (2) breach of duty of prudence claim for failure to monitor excessive recordkeeping fees (Count II); (3) breach of duties of prudence and loyalty as to the use of forfeited funds (Count I); (4) violation of the anti-inurement provision (Count III); and (5) engaging in prohibited transactions (Count IV). However, defendant's motion to dismiss must be granted as to (i) plaintiff Martin because she lacks standing for all claims as a non-Plan participant; and (ii) the failure to investigate alternative funds claim (Count I) for lack of standing as to all plaintiffs.

### 1.    Individual Standing

To have individual—or Article III—standing, plaintiffs each must "have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo*, 578 U.S. at 338. Notably, "a plaintiff need not state a meritorious or even plausible claim for relief under existing law in order to have standing to pursue a claim." *Duke*, 167 F.4th at 26.

"ERISA creates a private right of action for plan participants . . . to sue for relief for an alleged ERISA violation." *Collins*, 149 F.4th at 171. While plaintiffs "allege various ERISA violations[,] . . . [t]his does not necessarily provide constitutional standing." *Id.* (internal quotations and citation omitted). A plaintiff in an ERISA case must have a "concrete stake in [the] suit"—that is, must stand to benefit personally from the litigation—to have standing. *Thole v. U. S. Bank N.A*, 590 U.S. 538, 543–44 (2020); *Duke*, 167 F.4th at 26–27.

Our circuit's precedent "demonstrates that defined contribution plan participants seeking to obtain monetary relief for alleged ERISA violations must allege a non-speculative financial loss actually affecting, or imminently threatening to affect, their individual retirement accounts." *Collins*, 149 F.4th at 171 (collecting cases). To that end, plaintiffs can either allege that "*all* Plan participants were harmed by [defendant's] purported fiduciary breaches," or, alternatively, that "specific plaintiffs were harmed in a manner that also injured other [P]lan participants." *Id.* at 172 (emphasis added).

Defendant argues that each plaintiff lacks standing for various reasons. First, defendant contends that Kathi Martin was not a participant in the Plan. Def.'s Mot. at 13 (citing Dkt. No. 13-1 ("Ratcliffe Decl.") ¶ 3). In response, Martin concedes that she was not a participant in the Plan at issue here and, noting that her confusion stemmed from her participation in "a different retirement plan offered by [defendant] with similar investment options," wisely requests to "respectfully withdraw her claims from this action as to herself only." Dkt. No. 14 ("Pls.' Opp.") at 15–16 n.4. Defendant's motion must be, and is, granted as to Martin.[5]

---

[5] Relatedly, plaintiffs "reserve the right to amend their pleading to assert claims on behalf of participants in the [similar] plan, including [p]laintiff Martin." *Id.* Plaintiffs are reminded that once the deadline to amend the complaint as of right has passed, as here, *see* FED. R. CIV. P. 15(a)(1)(A), plaintiffs must either seek defendant's written consent or move the Court for leave to amend. Leave to amend the complaint will be granted "freely . . . when justice so requires." *Sacerdote*, 9 F.4th at 115 (quoting Fed. R. Civ. P. 15(a)(2)).

Regarding the remaining plaintiffs, defendant argues that their claims, to the extent that they allege mismanagement of funds they did not invest in, must be dismissed for lack of standing. Def.'s Mot. at 12–13.  The Court addresses standing as to each claim in turn.

### a.  Breach of Fiduciary Duties of Prudence and Loyalty

Counts I and II of the complaint encompass several purported breaches of the fiduciary duties of prudence and loyalty.  Compl. ¶¶ 63–72.  Namely, plaintiffs bring claims for (1) breach of the duty of prudence based on a failure to investigate the availability of alternative share classes (Count I); (2) breach of the duty of prudence based on a failure to investigate the availability of alternative funds (Count I); (3) breach of the duty of prudence based on defendant's failure to monitor indirect recordkeeper costs (Count II); and (4) breach of the duties of prudence and loyalty regarding the utilization of forfeited funds (Count I).  The Court will address each alleged breach in turn.

### (1)    Failure to Investigate the Availability of Alternative Share Classes

The complaint asserts that defendant acted imprudently by failing to investigate the availability of lower-cost and equally or better performing share classes.  Compl. ¶¶ 24–33.  Specifically, plaintiffs allege that although defendant "had access to . . . low-cost institutional share classes," defendant "instead offered higher cost mutual fund share classes," wasting "the assets of the Plan"—participants' retirement dollars.  *Id.* ¶ 26.

Plaintiffs point to two funds that defendant allegedly retained despite the availability of other identical and lower-cost share classes: (1) the Harbor Capital Appreciation Fund (hereinafter the "Harbor Fund"); and (2) the John Hancock Disciplined Value Mid Cap Fund (hereinafter the "John Hancock Fund").  *Id.* ¶¶ 27–29.

Upon review, plaintiffs John Gaetano and Bertha Nogas have clearly alleged standing for this claim because they each personally invested in the Harbor Fund and the John Hancock Fund. Compl. ¶¶ 9–10.  However, defendant correctly argues that plaintiff Maryanne Taverne lacks standing to assert this claim because, unlike Gaetano and Nogas, she does not allege that she invested in either fund.  Def.'s Mot. at 13; Compl. ¶ 12.

Plaintiffs concede this point.  Pls.' Opp. at 15–16; *see Barsoumanian v. Williams*, 29 F. Supp. 3d 303, 323 (W.D.N.Y. 2014) ("[T]his claim was found to be abandoned due to Plaintiff's failure to oppose this portion of the motion to dismiss"), *aff'd sub. nom. Barsoumanian v. University at Buffalo*, 594 F. App'x 41 (2d Cir. 2015) (summary order).  Accordingly, Taverne lacks standing to pursue claims based on failure to investigate alternative share classes of these funds. *See Collins*, 149 F.4th at 172.

### (2)    Failure to Investigate Availability of Alternative Funds

Second, plaintiffs "separately" allege that defendant breached its fiduciary duty of prudence by failing to investigate the availability of lower-cost and better-performing alternative funds.  Compl. ¶¶ 30–33.  Specifically, plaintiffs contend that defendant selected and retained funds with excessive fees or lower return rates without considering whether the Plan received sufficient benefits to justify the cost of these funds or if other lower-cost funds were available. *Id.* ¶¶ 34–45.

In support of these allegations, plaintiffs rely on two funds that defendant allegedly retained despite the availability of alternative lower-cost or better performing funds: (1) the T. Rowe Price Target Date Mutual Funds (hereinafter the "T. Rowe Mutual Funds");[6] and (2) the Plan's stable value funds (which are not specifically named in the complaint). *Id.* ¶¶ 30–33.

---

[6] The parties seem to conflate plaintiffs' duty of prudence claims predicated on the availability of alternate share classes with those based on the availability of alternate funds as they relate to the T. Rowe Mutual Funds. *See* Def.'s

As to the Plan's stable value funds, the complaint alleges that defendant chose to invest in lower-performing funds when "substantially similar products were available in the market that offered a better return," including other options offered by Lincoln.  Compl. ¶ 32.  Defendant argues that none of the plaintiffs has standing for this claim because they did not invest in any of the Plan's stable fund options.  Def.'s Mot. at 13.  Plaintiffs respond that the complaint does not separately allege that defendant failed to monitor the stable fund options, and any perceived differentiation is only intended to provide "an illustrative example of [defendant's] . . . deficient fiduciary process."  Pls.' Opp. at 16 n.5.

Defendant has the better argument.  Whether or not plaintiffs chose to frame their claim as one cause of action or as separate causes of action for each fund, plaintiffs have not plausibly alleged that any of "their benefits were or would imminently be affected by the performance of, or by fees associated with," the Plan's stable fund options.  *Collins*, 149 F.4th at 172; *see also TransUnion LLC v. Ramirez*, 594 U.S. 413, 431 (2021) ("[S]tanding is not dispensed in gross; rather, plaintiffs must demonstrate standing for each claim that they press and for each form of relief that they seek[.]").

Plaintiffs also fail to plausibly allege that defendant's actions related to the stable fund options constitute the sort of "plan-wide mismanagement" that "affected all plan participants, including them."  *Collins*, 149 F.4th at 172.  Plaintiffs therefore lack standing to challenge defendant's duty to investigate the Plan's stable fund options.

---

Mot. at 7; Pls.' Opp. at 16.  Unlike the Harbor Fund and the John Hancock Fund, the complaint does not allege that there was a better *class* of shares available for the T. Rowe Mutual Funds, but rather that a different *form of investment* was available in the collective trust option.  Compl. ¶¶ 30–31.  The Court therefore considers allegations related to the T. Rowe Mutual Funds as part of the alternative funds allegations.  Whether construed as part of their alternative share class or alternative funds claim, plaintiffs lack standing to pursue a breach of duty of prudence claim regarding the T. Rowe Mutual Funds because none of the plaintiffs has alleged they suffered a concrete injury based on a personal investment in such funds.

Turning to the T. Rowe Mutual Funds, the complaint alleges that defendant could have offered participants the less costly, but otherwise identical, T. Rowe Price Retirement Trusts collective trust. Compl. ¶¶ 30–31. Defendant does not argue that plaintiffs lack standing regarding their claim that defendant allegedly breached the duty of prudence in offering the T. Rowe Mutual Funds instead of the related collective trust. But as mentioned *supra*, "standing is a threshold matter of justiciability," so the Court must examine plaintiffs' standing as to each claim, whether or not defendant challenges it. *Tavarez*, 623 F. Supp. 3d at 370.

As with the stable value funds, plaintiffs clearly lack standing to pursue a claim based on the T. Rowe Mutual Funds for the same reason: plaintiffs do not allege that any of them invested in any version of this fund, or that all Plan participants were harmed by this purported breach. *Collins*, 149 F.4th at 172. Plaintiffs therefore lack standing as to their breach of duty of prudence claim for failure to investigate the availability of alternative funds.

### (3)    Failure to Monitor Recordkeeping Fees

Plaintiffs next allege that defendant breached its fiduciary duty of prudence by failing to monitor the Plan's recordkeeping fees. Compl. ¶¶ 34–45. Plaintiffs allege that Lincoln, the Plan's custodian and recordkeeper, received excessive compensation from Plan assets and that defendant's failure to recognize this "potential for abuse" caused participants to unnecessarily diminish their retirement savings. *Id.* ¶¶ 43, 45.

Plaintiffs allege that those fees depended not upon the amount of assets in a plan participant's account, but on the number of total participants within the Plan. Under the Plan, "the cost of providing administrative services to a participant with a $100,000 account balance is the same for a participant with a $1,000 account balance." Compl. ¶ 40.

Upon review, plaintiffs have plausibly alleged a concrete injury with respect to their claim for excessive recordkeeping fees. *See, e.g.*, *Collins*, 149 F.4th at 172 (affirming plaintiffs had standing to pursue certain excessive fee claims); *Leber v. Citigroup 401(k) Plan Inv. Comm.*, 323 F.R.D. 145, 156 (S.D.N.Y. 2017) (finding that plaintiffs personally suffered an injury in fact where plaintiffs alleged that they "personally paid excessive fees"). Accordingly, plaintiffs have Article III standing to pursue their failure to monitor fees claim.

### (4)    Improper Use of Forfeited Funds

Finally, plaintiffs allege that defendant breached its fiduciary duties of loyalty and prudence by using leftover money to reduce its own financial obligations. Compl. ¶¶ 46–55. As plaintiffs explain, employees who do not spend sufficient time in the Plan for defendant's contributions to "vest" forfeit these contributions back to defendant. *Id.* ¶ 47. According to plaintiffs, defendant then applies these forfeited funds to reduce its own future employer contributions rather than to offset the Plan's administrative expenses. *Id.*

Plaintiffs have standing to pursue this claim for the same reason they can pursue their excessive fees claim: all participants pay for the administration of the Plan. Compl. ¶ 54. And plaintiffs allege that from 2019 to 2023, defendant directed substantial funds that could have been used to offset Plan expenses to instead reduce its own matching contributions to the Plan. *Id.* ¶¶ 48–52. This is the sort of alleged "plan-wide mismanagement" that "affected all plan participants, including them." *Collins*, 149 F.4th at 172. Plaintiffs have therefore sufficiently alleged standing to pursue their breach of fiduciary duties claim regarding the forfeitures.

In sum, plaintiffs have standing to assert their breach of fiduciary duty of prudence claim to the extent it is premised on funds that plaintiffs invested in: the John Hancock Fund and the Harbor Fund. In addition, plaintiffs have standing to pursue their duty of prudence and loyalty

claims to the extent they sufficiently allege plan-wide mismanagement, namely, as to the excessive recordkeeping fees and improper use of forfeited funds.  Otherwise, plaintiffs have not plausibly alleged individual injury, which is fatal to the standing inquiry for the remaining portions of their breach of fiduciary duty claims.

### b.  Remaining Claims

Plaintiffs also assert claims alleging that defendant violated ERISA's anti-inurement provision (Count III) and engaged in a prohibited transaction (Count IV) by applying forfeited funds to reduce its own future employer contributions rather than to offset the Plan's administrative expenses.  Compl. ¶¶ 46–55, 73–81.

As with their breach of fiduciary duties claim premised on the same conduct, plaintiffs have plausibly alleged that they suffered an injury regarding defendant's alleged use of forfeited nonvested accounts to reduce employer matching contributions.  Plaintiffs' allegations are sufficient, at least for purposes of individual or Article III standing, to support a plausible inference that defendant's challenged conduct amounted to plan-wide mismanagement that caused every plan participant to suffer a financial loss.

Thus, plaintiffs have plausibly alleged an injury to their individual accounts due to the challenged conduct.  As a result, plaintiffs have individual standing for their claims that defendant violated the anti-inurement provision and engaged in a prohibited transaction.

### 2.    Class Standing

"[T]o establish 'class standing,' a showing of individual injury is required."  *Collins*, 149 F.4th at 174.  While "members of a defined contribution plan who chose certain investment options may in certain circumstances bring claims on behalf of other participants that chose entirely different investment options," in such circumstances, plaintiffs "may only challenge, on behalf of the

class, [d]efendants' general practices which affect *all* participants . . . or [d]efendants' practices that are sufficiently similar to the practices causing, or imminently threatening to cause, harm to [p]laintiffs' individual retirement benefits." *Id.* (emphasis in original).

Therefore, our circuit's standard for class standing permits plaintiffs to "bring claims on behalf of absent class members only if they plausibly alleged (1) that they personally have suffered some actual injury as a result of the purportedly illegal conduct of the defendant, and (2) that such conduct implicates the same set of concerns as the conduct alleged to have caused injury to other members of the putative class by the same defendants." *Collins*, 149 F.4th at 174 (quoting *NECA-IBEW Health & Welfare Fund v. Goldman Sachs & Co.("NECA")*, 693 F.3d 145, 162 (2d Cir. 2012)) (cleaned up).

To "implicate the same set of concerns," a named plaintiff's injury must not "have the potential to be very different" or be likely to "turn on very different proof" from the injuries of absent class members. *Id.* at 175 (quoting *NECA*, 693 F.3d at 162–63). Additionally, ERISA plaintiffs may not assert that they have standing as representatives of a plan in lieu of traditional Article III standing. *Id.* at 175–76 (citing *Thole*, 590 U.S. at 543).

After considering the allegations in the complaint, each of the claims for which plaintiffs have shown individual or Article III standing are sufficiently alleged to establish class standing as well. Plaintiffs' incentives are aligned with those of the absent class members because they each allege they personally lost a portion of their retirement savings due to defendant's challenged conduct. *See* Compl. ¶¶ 9, 10, 12.

Thus, plaintiffs may assert claims on behalf of themselves and the putative class for (1) breach of the duty of prudence regarding defendant's failure to investigate the availability of alternative share classes (Count I); (2) breach of the duty of prudence based on defendant's failure

to monitor recordkeeping costs (Count II); (3) breach of the duties of prudence and loyalty regarding the utilization of forfeited funds (Count I); (4) defendant's violation of the ERISA anti-inurement provision (Count III); and (5) defendant's engagement in a prohibited transaction by misusing forfeited funds (Count IV).

### B.      Failure to State a Claim

Defendant also seeks dismissal of plaintiffs' claims under Rule 12(b)(6) for failure to state a claim.  *See* Def.'s Mot. at 14–27.  As detailed *supra*, after conducting a review of this Court's subject matter jurisdiction, plaintiffs' remaining claims are for breach of the fiduciary duty of prudence (Counts I and II), violation of the fiduciary duty of loyalty (Count I), violation of the anti-inurement provision (Count III), and engaging in a prohibited transaction (Count IV).  Compl. ¶¶ 63–81.  The Court will first address the merits of plaintiffs' share class and excessive fee claims before turning to the claims that relate to defendant's use of forfeited funds.

### 1.      Breach of Fiduciary Duty of Prudence

ERISA imposes a duty of prudence upon plan fiduciaries, directing them to make reasonable investment and managerial decisions "with the care, skill, prudence, and diligence under the circumstances then prevailing" that a prudent man acting in a like capacity and familiar with such matters would use.  *Singh v. Deloitte LLP*, 650 F. Supp. 3d 259, 266 (S.D.N.Y. 2023) (quoting 29 U.S.C. § 1104(a)(1)(B)), *aff'd*, 123 F.4th 88 (2d Cir. 2024).  To state a claim for breach of fiduciary duty under ERISA, the plaintiffs must allege that "(1) the defendant was a fiduciary who (2) was acting in a fiduciary capacity, and (3) breached his fiduciary duty."  *Id.* at 265–66.

Defendant does not dispute that it was a fiduciary acting in its fiduciary capacity when it engaged in the challenged conduct.  *See* Def.'s Mot. at 6, 19–20.  The only element contested by defendant is the question of breach.  Plan fiduciaries "normally ha[ve] a continuing duty . . . to

monitor investments and remove imprudent ones," which includes "systematically consider[ing] all the investments . . . at regular intervals to ensure that they are appropriate." *Tibble v. Edison Int'l*, 575 U.S. 523, 529 (2015) (cleaned up).

In order to plausibly raise an inference that the plan fiduciary acted imprudently, a plaintiff must "alleg[e] facts that, if true, would demonstrate that 'an adequate investigation would have revealed to a reasonable fiduciary that [an] investment at issue was improvident' or 'that a superior alternative investment was readily apparent such that an adequate investigation would have uncovered that alternative.'" *Collins v. Ne. Grocery, Inc.*, 2025 WL 2383710, at \*2 (2d Cir. Aug. 18, 2025) (quoting *PBGC*, 712 F.3d at 718–19) (summary order).

That said, plaintiffs may not rely on "after-the-fact allegations that . . . a better alternative was available at the time of the challenged decisions." *Id.* at \*2. And "while 'there is no doubt a claim for breach of ERISA's duty of prudence can be based on allegations that the fees associated with [a] defined-contribution plan are too high compared to available, cheaper options,' plaintiff[s] must allege a 'meaningful benchmark' to raise [an] inference of imprudence." *Singh*, 123 F.4th at 95 (quoting *Matney v. Barrick Gold of N. Am.*, 80 F.4th 1136, 1148 (10th Cir. 2023)).

### a.    Failure to Investigate the Availability of Alternative Share Classes

As discussed *supra*, plaintiffs argue that defendant breached its fiduciary duty of prudence by failing to investigate the availability of lower-cost and equally or better performing share classes. Compl. ¶¶ 24–29. Specifically, plaintiffs allege that although defendant "had access to . . . low-cost institutional share classes," defendant "instead offered higher cost mutual fund share classes," wasting "the assets of the Plan." *Id.* ¶ 26. Plaintiffs allege that defendant retained more expensive share classes of the Harbor Fund and the John Hancock Fund despite the availability of other identical and lower-cost share classes. *Id.* ¶¶ 27–29.

Defendant argues that plaintiffs "assert no factual allegations concerning the process that MVHS allegedly used (or did not use) to monitor the Plan's investments, let alone how the process was flawed," and that the complaint "contains no factual allegations that the Plan qualified for the lower-class shares of the classes of the two identified funds." Def.'s Mot. at 14–15.

This argument must be rejected. Plaintiffs cannot, and are not required to, know defendant's process for selecting certain share classes without the benefit of discovery, which is precisely why a claim under ERISA "may withstand a motion to dismiss based on sufficient circumstantial factual allegations to support the claim, even if it lacks direct allegations of misconduct." *Sacerdote*, 9 F.4th at 107.

That said, in order to reach discovery, plaintiffs first must plead such "circumstantial factual allegations." *Id.* at 107. Plaintiffs have failed to do so here, and their assertion that the complaint's allegations are "analogous" to those in *Sacerdote* is unpersuasive. Pls.' Opp. at 17. In *Sacerdote*, the plaintiffs alleged that "63 of the funds included in the 103-fund and 84-fund Plans charged excessive . . . fees, each of which plaintiffs set forth with specificity." *Sacerdote*, 9 F.4th at 109.

Plaintiffs have not done that. Instead, plaintiffs have alleged that defendants allegedly acted imprudently with regard to share class selection of two funds, and have failed to even allege how many total fund options were included in the Plan during the Class Period. *See* Compl. ¶¶ 13–16, 23–55. Plaintiffs' allegations are therefore too conclusory for the Court to infer that defendant acted imprudently with regard to the selection of share classes. Thus, plaintiffs have failed to plausibly allege a breach of duty of prudence claim for failure to investigate alternative share classes.

**b.**      **Failure to Monitor Recordkeeping Fees**

Plaintiffs next allege that defendant breached its duty of prudence by failing to monitor the Plan's recordkeeping fees.  Compl. ¶¶ 34–45.  In particular, plaintiffs allege that Lincoln's compensation as the recordkeeper was unreasonable and excessive for the services provided.  In support of this claim, plaintiffs assert that the compensation provided to Lincoln, as compared to "several different high-quality, national recordkeepers" for other "similarly sized defined contribution plans," was significantly higher.  *Id.* ¶ 44.  Plaintiffs allege that the services provided to these other plans and the Plan at issue here were "materially identical."  *Id.*

"To state an imprudence claim arising out of excessive fees, [p]laintiffs ha[ve] to allege that the 'challenged fees were excessive relative to the services rendered' or otherwise allege 'factors relevant to determining whether a fee is excessive under the circumstances.'"  *Collins*, 2025 WL 2383710, at *3 (quoting *Singh*, 123 F.4th at 93–94).

Plaintiffs have not done so here.  The complaint alleges no facts, let alone any "meaningful benchmark[s]," to support the inference that recordkeeping services provided by Lincoln's many alleged comparators were "materially identical" to the services provided by Lincoln as plaintiffs allege.  *Singh*, 123 F.4th at 95 (internal quotations omitted); *see* Compl. ¶ 44.

Indeed, despite the complaint's nine pages of tables showing that alleged comparator plans paid less for their recordkeeping services during the Class Period, *see* Compl. at 20–28, the complaint is devoid of any factual allegations regarding the services the other recordkeepers provided to the allegedly similar-sized plans.  Compl. ¶¶ 34–45, 69–72.  "Plaintiffs cannot rely, as they in effect do here, on bare allegations that other plans paid lower fees."  *Collins*, 2025 WL 2383710, at *3 (citing *Singh*, 123 F.4th at 95–96).  Thus, defendant's motion to dismiss must be granted as to plaintiffs' claim for breach of the fiduciary duty of prudence.

## 2.  Forfeiture Claims

Plaintiffs' remaining claims for breach of fiduciary duties, violation of ERISA's anti-inurement provision, and engaging in a prohibited transaction are all premised on the same underlying conduct: defendant's use of nonvested, forfeited funds to decrease its own employer contributions rather than to defray Plan expenses.  *See* Compl. ¶¶ 46–55, 66–68, 73–81.

Plaintiffs allege that, under the Plan, participants are "immediately vested in their own contributions, along with any income or losses on those balances.  [Defendant's] matching contributions, plus any income or losses on those balances, become vested over a period of years depending on when the participant was hired."  Compl. ¶ 46.  But when a participant has a "break in service" before defendant's contributions have vested, "the participant forfeits the balance of unvested matching contributions . . . and [d]efendant exercises discretionary authority and control over how these Plan assets are thereafter reallocated."  *Id.* ¶ 47.

Plaintiffs acknowledge that the terms of the Plan provide that "forfeited nonvested accounts may be used to pay Plan administrative expenses *or* reduce future matching contributions."  Compl. ¶ 47 (emphasis added); *see* Dkt. No. 13-2 ("Plan") § 7.13.  Even so, plaintiffs assert that defendant violated its fiduciary duties of prudence and loyalty and provisions of ERISA by "reallocating nearly all of these Plan assets to reduce future matching contributions to the Plan."  Compl. ¶ 47.

Defendant correctly states that this is a novel legal issue which has not yet been examined by this Court or the Second Circuit.  Def.'s Mot. at 24.  And "no Circuit Court of Appeals has yet ruled on the issue," *Heet v. Nat'l Med. Care, Inc.*, --- F. Supp. 3d ---, 2026 WL 353317, at *2 (D. Mass. Feb. 9, 2026), though appeals are currently pending before several circuit courts.  *Id.* at *5; *see, e.g.*, *Hutchins v. HP Inc. ("Hutchins I")*, 737 F. Supp. 3d 851, 862–64 (N.D. Cal. 2024) *and*

*Hutchins v. HP Inc. ("Hutchins II")*, 767 F. Supp. 3d 912, 924–27 (N.D. Cal. 2025), *appeal docketed*, No. 25-826 (9th Cir. Feb. 6, 2025); *Jacob v. RTX Corp.*, --- F. Supp. 3d ---, 2026 WL 173228, at *8 (E.D. Va. Jan. 22, 2026), *appeal docketed*, No. 26-1127 (4th Cir. Feb. 3, 2026).

District courts nationwide have reviewed this issue and reached mixed conclusions. *See McManus v. Clorox Co.*, 2025 WL 732087, at *1 (N.D. Cal. Mar. 3, 2025) (noting that this is a novel ERISA interpretation with no binding authority over which "[r]easonable minds can differ, and several district courts do"). Based on this Court's research, there appears to be only one in-circuit decision, *Polanco*, 2025 WL 3003060, at *1, discussing the issue thus far.

Defendant argues that the Court should follow what appears to be the majority approach by dismissing plaintiffs' forfeiture claims because (1) the use of forfeitures satisfied ERISA's fiduciary mandates; (2) plaintiffs impermissibly seek to create a new benefit, not remedy the breach of an existing duty; and (3) these claims contravene established law.

For the reasons discussed below—including several of the same reasons discussed in *Polanco*—the Court agrees with defendant. Plaintiffs have failed to state a claim under each of their three theories premised on defendant's allegedly improper use of forfeitures, and this claim or these claims must be dismissed.

### a.    Breach of Fiduciary Duties

First, plaintiffs allege that defendant's decision to use forfeitures to decrease employer contributions breached its fiduciary duties because defendant "failed to undertake any investigation into which option was in the best interest of the Plan's participants" and that "[i]n making these decisions, [d]efendant is presented with a conflict of interest that pits its interests over the participants' interests." Compl. ¶ 54. The Court will first address plaintiffs' duty of loyalty claim, followed by their duty of prudence claim.

**(1)    Duty of Loyalty**

The duty of loyalty "requires plan fiduciaries to act 'solely in the interest of the [plan's] participants and beneficiaries.'" *Cunningham v. Cornell Univ.*, 604 U.S. 693, 696 (2025) (quoting § 1104(a)(1)(A)). "Among other things, the duty of loyalty requires the fiduciary to deal fairly and honestly with beneficiaries, . . . so as to ensure that a plan receives all funds to which it is entitled." *Id.* (internal quotations and citations omitted).

"To plausibly plead a duty of loyalty claim under ERISA, a plaintiff must allege facts showing that the fiduciary in question acted purposely—or with the goal—of providing benefits to itself or someone else." *Carlisle v. Bd. of Trs. of Am. Fed'n of N.Y. State Teamsters Conf. Pension & Ret. Fund*, 2025 WL 438123, at \*20 (N.D.N.Y. Feb. 7, 2025) (cleaned up), *aff'd*, 2025 WL 3251154 (2d Cir. Nov. 21, 2025) (summary order).

First, defendant argues that it did not violate ERISA because the Plan "explicitly authorizes MVHS to use forfeitures to offset employer contributions." Def.'s Mot. at 19. But this alone is not determinative. *See Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014) (holding that ERISA's fiduciary duties "trump[ ] the instructions of a plan document").

To the contrary, and as plaintiffs assert, "plan terms do not excuse fiduciary misconduct." Pls.' Opp. at 26. Nevertheless, "most courts have rejected duty of loyalty claims concerning forfeitures, reasoning that '[w]hen (1) a plan document gives a plan fiduciary discretion in how to use forfeitures and (2) participants otherwise receive everything guaranteed by the plan's terms, plan fiduciaries do not violate their duty of loyalty merely by declining to use forfeitures to cover administrative expenses.'" *Tillery v. WakeMed Health & Hosps.*, --- F. Supp. 3d ---, 2026 WL 125784, at \*4 (E.D.N.C. Jan. 15, 2026) (quoting *Polanco*, 2025 WL 3003060, at \*4 and collecting cases).

So too here.  Plaintiffs have failed to plausibly allege that defendant breached its duty of loyalty based on the forfeiture allegations in the complaint.  First, plaintiffs have not alleged that they received anything less than what the Plan promised.  *See Hutchins II*, 767 F. Supp. 3d at 925 ("[W]here the terms of an ERISA plan comply with the law, the plan fiduciary is not authorized to provide Plan participants with *more* benefits than the Plan documents set out.") (citations omitted); *Faber v. Metro. Life Ins. Co.*, 2009 WL 3415369, at *7 (S.D.N.Y. Oct. 23, 2009) ("[W]here a fiduciary complies with a plan's lawful terms and provides the beneficiaries the benefits they were due under the plan, there is no violation of § 1104(a)'s 'exclusive purpose' requirement."), *aff'd*, 648 F.3d 98 (2d Cir. 2011).

In reaching that conclusion, the Court agrees with defendant that "ERISA is not intended to create benefits; rather, it protects the benefits that are due to an employee under a plan."  Def.'s Mot. at 20 (citing *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996)).  Indeed, "[n]othing in ERISA requires employers to establish employee benefits plans.  Nor does ERISA mandate what kinds of benefits employers must provide if they choose to have such a plan."  *Spink*, 517 U.S. at 887.  "ERISA does, however, seek to ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits."  *Id.*

Plaintiffs have not alleged that the Plan's terms limit when and how defendant chooses to allocate nonvested forfeitures; to the contrary, plaintiffs acknowledge that defendant explicitly maintains "discretionary authority and control" over how forfeitures are "reallocated," whether to Plan expenses or employer contributions.  Compl. ¶ 47; *see* Plan § 7.13.  Thus, plaintiffs' argument that defendant failed to "protect the benefits that are due to an employee under a plan" is plainly incorrect.  Pls.' Opp. at 26.

Not only does the Plan provide that defendant can choose whether to use forfeited funds for Plan expenses or employer contributions, but neither the Plan nor the Adoption Agreement dictates an order of priority for the use of such funds. *See* Plan §§ 7.12, 7.13; Dkt. No. 13-3 ("Adoption Agreement") § 8-6. Therefore, accepting plaintiffs' theory would effectively create an additional benefit—payment of plaintiffs' administrative costs—not contemplated by the Plan.

Moreover, plaintiffs mistakenly "assume[ ] that Plan participants would have received greater benefits if [defendant] had used [f]orfeitures to cover administrative expenses instead of future employer contributions." *Polanco*, 2025 WL 3003060, at *4. Under the terms of the Adoption Agreement, which "contains the elective provisions that an Employer may complete to supplement or modify the provisions under the Plan," Plan § 1.05, defendant is "authorized to make Employer Contributions under the Plan." Adoption Agreement § 6-1.

That said, the next section notes that defendant is not *required* to make such contributions. Adoption Agreement § 6-2 ("The Employer will determine in its sole discretion how much, *if any*, it will make as an Employer Contribution.") (emphasis added). Therefore, "[b]ecause [defendant] was not required to pay employer contributions, every forfeited dollar allocated toward future employer contributions was a dollar Plan participants would not otherwise have in their accounts." *Polanco*, 2025 WL 3003060, at *4. So plaintiffs did benefit via the elective employer contributions, and instead "essentially claim that they would have preferred to have [f]orfeitures used to pay administrative expenses *as well as* employer contributions." *Id.* (emphasis in original).

Plaintiffs are correct that defendant *could* have used forfeitures to defray Plan costs and still have made elective employer contributions, but "the Plan document does not guarantee participants that benefit," *id.*, and, as stated above, ERISA solely protects the benefits that are due to an employee under a plan. *See Faber*, 2009 WL 3415369, at *7.

Plaintiffs cite several cases in their opposition denying motions to dismiss these types of forfeiture claims. *See* Pls.' Opp. at 23–27. The Court has considered these, along with more recent decisions holding similarly (which have emerged as the minority approach to this issue among district courts), and finds them to be distinguishable from this case.

First, plaintiffs rely on *Rodriguez v. Intuit Inc.*, 744 F. Supp. 3d 935, 943 (N.D. Cal. 2024). But *Rodriguez* is plainly distinguishable. The plaintiffs there alleged that the defendant company made certain decisions that were not authorized by its ERISA plan documents, thereby *violating* the plan terms. 744 F. Supp. 3d at 944–45. Here, by contrast, plaintiffs do not allege any such violation; the Plan terms explicitly permit defendant to use forfeitures to offset employer contributions in its discretion. Compl. ¶ 47.

Plaintiffs also point to *Perez-Cruet v. Qualcomm Inc.* to argue that defendant improperly put its own interests above Plan participants. 2024 WL 2702207, at *2 (S.D. Cal. May 24, 2024), *reconsideration denied*, 2024 WL 3798391 (S.D. Cal. Aug. 12, 2024). The Court agrees with the *Hutchins* court that *Perez-Cruet* is unpersuasive because the analysis in that case was "conclusory and [did] not directly address many of the points made by Defendants in the motion to dismiss." *Hutchins I*, 737 F. Supp. 3d at 862 n.1 (citing *Perez-Cruet*, 2024 WL 2702207, at *2–3). The court in *Perez-Cruet* simply reasoned that plaintiffs stated a claim based on "[b]ack-of-the-envelope math" which revealed that if the defendants had used the forfeited amounts from a certain year towards expenses, the participants would not have incurred any charge for plan administration that year. 2024 WL 2702207, at *2. As discussed, just because an employer *can* use forfeitures to pay for expenses does not mean it *must*—that would give participants an additional benefit not proscribed by the Plan.

Additionally, plaintiffs cite *McManus*, which is also distinguishable. There, the court found allegations that the defendants, "after giving themselves discretion to do so as fiduciaries, used Plan assets to reduce Clorox's non-elective contributions to the Plan instead of reducing Plan participants' administrative costs," were sufficient to state a claim for breach of the duty of loyalty. 2025 WL 732087, at *3. In finding this claim plausible, the *McManus* court reasoned that the plaintiff's "argument that defendants were motivated solely by self-interest . . . is plausible given that no other justification is readily apparent." *Id.* at *4. But the existence of a possible conflict of interest does not automatically amount to a breach of ERISA's fiduciary duty of loyalty. *See Hutchins II*, 767 F. Supp. 3d at 924; *Polanco*, 2025 WL 3003060, at *7.[7]

Lastly, defendant argues—and the Court agrees—that a ruling in plaintiffs' favor would contravene a U.S. Treasury Department regulation. *See* Def.'s Mot. at 24–26 (citing Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282, 12283 (proposed Feb. 27, 2023) (to be codified at 26 C.F.R. pt. 1)). Although the Treasury regulation to which defendant points does not "foreclose[ ] [plaintiffs'] theory as a matter of law," *Hutchins I*, 737 F. Supp. 3d at 859, such regulations have been set forth by many similarly situated defendants and widely found to be persuasive by other courts. *See id.* at 863–64 (rejecting plaintiffs' argument "that the general fiduciary duty provision of ERISA abrogates these long-settled rules regarding the use of forfeitures in defined contribution plans" because plaintiffs pointed to no "intervening changes in the law or any particularized facts justifying departure from . . . settled rules"); *see also Polanco*, 2025 WL

---

[7] As noted by the *Polanco* court, *McManus* is distinguishable for the additional reason that, in that Plan, the defendant was required to make non-elective contributions, so participants would have still been entitled to such contributions even if the defendant *had* used forfeitures to defray Plan expenses. 2025 WL 3003060, at *7. But here, as in *Polanco*, if defendant had used forfeitures to cover administrative expenses, it "would have been under no obligation to make employer contributions as well." *Id.*

3003060, at *4–6; *Middleton v. Amentum Parent Holdings, LLC*, 2025 WL 2229959, at *15 (D. Kan. Aug. 5, 2025).

### (2)   Duty of Prudence

Having dismissed the loyalty claim, the Court now turns to the breach of duty of prudence claim.  As discussed in detail *supra* regarding the merits of plaintiffs' other duty of prudence claims, the duty of prudence directs fiduciaries to make reasonable investment and managerial decisions "with the care, skill, prudence, and diligence under the circumstances then prevailing" that a prudent man acting in a like capacity and familiar with such matters would use.  *Singh*, 650 F. Supp. 3d at 266 (quoting 29 U.S.C. § 1104(a)(1)(B)).

As in *Hutchins I* and *Hutchins II*, the allegations regarding defendant's imprudence in the complaint are overbroad.  737 F. Supp. 3d at 862; 767 F. Supp. 3d at 926–27.  Plaintiffs' claim that defendant breached its fiduciary duties by choosing to allocate forfeitures to employer contributions rather than Plan expenses, if accepted by the Court, would essentially boil down to one conclusion: "if given the option between using forfeited funds to pay administrative costs or to reduce employer contributions, a fiduciary is *always* required to choose to pay administrative costs" regardless of "any particular circumstances that may be present" in the case.  *Hutchins I*, 737 F. Supp. 3d at 862.  Such a rule would "fl[y] in the face of decades of ERISA practice." *Hutchins II*, 767 F. Supp. 3d at 927.

The trial court's analysis in *Heet v. National Medical Care, Inc.* provides a useful foil. 2026 WL 353317, at *2.  There, the court denied a motion to dismiss a similar set of forfeiture claims.  In doing so, the court found that the allegations appropriately cabined the breadth of the plaintiffs' claims to fit the circumstances, such that they comported with *Hutchins I* and *Hutchins II*.  *Id.*  Additionally, the court noted that the complaint alleged sufficient facts to support an

inference that defendants failed to properly investigate as a prudent fiduciary would have done, including, *inter alia*, "whether there was a risk that it would default on its Plan matching contributions if forfeitures were used to pay Plan administrative expenses." *Id.* at \*7.

Here, plaintiffs do not plead, as they must, details supporting an inference that defendant failed to conduct an adequate inquiry. *Polanco*, 2025 WL 3003060, at \*8 ("There must be specific facts alleged that invite the inference that the fiduciary actually engaged in imprudent conduct.") (quoting *Hutchins II*, 767 F. Supp. 3d at 927). In this case, plaintiffs do not allege that they did not receive the benefits to which they were entitled under the Plan. Thus, plaintiffs fail to plausibly allege that a "proper" investigation would have led to a different outcome. Accordingly, plaintiffs' claim for breach of the fiduciary duty of prudence based on the forfeitures must be dismissed.

**b.    Prohibited Transactions**

Plaintiffs next allege that defendant violated Section 1106 of ERISA by using forfeited funds to decrease its own employer contributions during the Class Period instead of defraying Plan expenses. Defendant argues plaintiffs have not adequately alleged a prohibited transaction claim because (1) their allegations are purposely vague and (2) the conduct at issue does not constitute a "transaction." Def.'s Mot. at 22–23.

Section 1106 of ERISA protects beneficiaries against "transactions tainted by a conflict of interest and thus highly susceptible to self-dealing." *Lowen v. Tower Asset Mgmt., Inc.*, 829 F.2d 1209, 1213 (2d Cir. 1987). Section 1106 "supplements" the duty of loyalty by "categorically barring" self-dealing transactions between an ERISA plan and a fiduciary. *Cunningham*, 604 U.S. at 697. "To state a claim under § 1106(a) or (b), a plaintiff must allege a transaction within the meaning of those provisions." *Polanco*, 2025 WL 3003060, at \*9 (internal citation omitted).

The Supreme Court has held that the payment of benefits is not a "transaction" within the meaning of the "prohibited transactions" provision. *See Spink*, 517 U.S. at 892–93. The types of transactions enumerated in § 1106(a)(1) "are commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length." *Id.* at 893. Additionally, the Court emphasized that these transactions "involve uses of plan assets that are potentially harmful to the plan." *Id.* "The payment of benefits conditioned on performance by plan participants cannot reasonably be said to share that characteristic." *Id.*

Measured against this general body of law, plaintiffs have failed to adequately state a claim under Section 1106 because the conduct at issue here, *i.e.*, using forfeitures to decrease employer contributions, does not constitute a "transaction" within the meaning of either of those provisions. Plaintiffs' argument that *Spink* does not apply is unfounded. *See Polanco*, 2025 WL 3003060, at *10 (noting that "numerous courts agree" that *Spink* applies "with equal force to Section 1106(b)(1), given the Supreme Court 'has interpreted § 1106 to prohibit fiduciaries from involving the plan and its assets in certain kinds of business deals'" and collecting cases) (quoting *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004)).

Plaintiffs have not adequately pleaded a prohibited transaction within the meaning of § 1106(a) or (b). Accordingly, this claim must be dismissed.

### c.    Violation of Anti-Inurement Provision

Plaintiffs' final claim asserts that defendant violated ERISA's anti-inurement provision, 29 U.S.C. § 1103(c)(1), which provides that "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1).

Defendant argues that plaintiffs fail to state a claim because (1) there are no allegations of removal or diversion of assets from the Plans, and in fact, plaintiffs admit that the assets remain in the plan, and (2) even if reducing employer contribution costs provided an "incidental" benefit to defendant, it did not violate ERISA's anti-inurement provision. Def.'s Mot. at 21–22.

"Although there is 'scant caselaw discussing the precise elements of a *prima facie* claim of violation of ERISA's anti-inurement provision,' the Second Circuit has held that allegations of 'indirect' benefits inuring to an employer are insufficient to state an anti-inurement claim under Section 403(c)(1)." *Krohnengold v. New York Life Ins. Co.*, 2022 WL 3227812, at *10 (S.D.N.Y. Aug. 10, 2022) (quoting *Walsh v. Satori Grp., Inc.*, 2021 WL 2072237, at *4 (E.D. Pa. May 24, 2021) and citing *Flanigan v. Gen. Elec. Co.*, 242 F.3d 78, 88 (2d Cir. 2001)). "When a plaintiff does not allege that the defendant used any of the assets for a purpose other than to pay its obligations to the Plan's beneficiaries, the defendant could not have violated the anti-inurement provision." *Tillery*, 2026 WL 125784, at *7 (quoting *Barragan v. Honeywell Int'l Inc.*, 2024 WL 5165330, at *5–6 (D.N.J. Dec. 19, 2024))

Plaintiffs argue that whether forfeitures are removed from or reallocated within the Plan "is a distinction without a difference." Pls.' Opp. at 27. But that argument is without merit. Plaintiffs do not allege that any of the forfeited assets at issue ever left the Plan, Compl. ¶¶ 53, 75, or that defendant used Plan assets "for a purpose other than to pay its obligations to the Plan's beneficiaries." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 442–43 (1999).

Moreover, using forfeitures to pay plan participants benefits participants. When defendant reallocates nonvested forfeited assets to participants' accounts via its discretionary contributions, the participants' accounts increase—a clear benefit. "Although defendants also benefit from the use of forfeitures to reduce employer contributions, such allegations of 'indirect' benefits to an

employer are 'insufficient to state a claim under the anti-inurement provision.'" *Jacob*, 2026 WL 173228, at \*8 (quoting *Hutchins II*, 767 F. Supp. at 864).

Thus, plaintiffs have failed to plausibly allege a claim for violation of the anti-inurement provision, and this claim must be dismissed.

## V.    CONCLUSION

For the foregoing reasons, plaintiffs lack standing to pursue certain of their claims, and the claims for which they do have standing are insufficiently pleaded to withstand a motion to dismiss.

Therefore, it is

**ORDERED** that

1.  Defendant's motion to dismiss (Dkt. No. 13) is **GRANTED**;

2.  Plaintiffs' complaint (Dkt. No. 1) is **DISMISSED**.

The Clerk of the Court is directed to terminate the pending motion (Dkt. No. 13), enter a judgment accordingly, and close the case.

**IT IS SO ORDERED.**

Dated: March 27, 2026

Utica, New York.

Anthony J. Brindisi
U.S. District Judge